# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREA CHAPPETTA,<br>    Plaintiff,<br><br>v.<br><br>ISRAEL SOTO,<br>    Defendant. | CIVIL ACTION NO.<br>3:06cv1913 (SRU) |

## RULING ON MOTION FOR SUMMARY JUDGMENT

This case raises fundamental questions about how Connecticut's accidental failure of suit statute, Connecticut General Statutes § 52-592, applies to actions commenced in federal court. Andrea Chappetta's initial lawsuit against Israel Soto failed because she did not serve Soto with her complaint alleging negligence within the two-year statute of limitations. Chappetta refiled her claims against Soto, contending that her claims are eligible to be "saved" by section 52-592 because her initial lawsuit was dismissed as untimely due to insufficient service. I conclude that, in light of the Connecticut Supreme Court's decision in *Rocco v. Garrison*, 268 Conn. 541 (2004), which distinguished "timely commencement" for purposes of section 52-592 from "timely commencement" for purposes of the statute of limitations, Chappetta may invoke section 52-592 to save her claims. Therefore, Soto's motion for summary judgment is denied.

**I.    Factual Background**

On June 8, 2003, Soto and Chappetta were involved in a motor vehicle accident, which caused Chappetta to suffer personal injuries. In February 2005, Soto's insurance agent, Michael Cholowa of Progressive Insurance Company, offered to settle the claim with Chappetta's attorney. The parties did not settle, because they could not agree on a settlement figure.

On June 3, 2005, within the two-year statute of limitations, Chappetta filed her complaint

in this diversity action, naming Soto, along with Regal Entertainment Group and Regal Cinemas, Inc., as defendants (Case No. 05cv896). On June 6, 2005, Chappetta mailed Soto a request for waiver of service of process, care of his insurer. Those materials included: a notice of lawsuit, a copy of the complaint, and a letter requesting that Progressive make arrangements to have Soto execute the waiver. After Soto refused to execute the waiver, Chappetta had Soto formally served with the summons and complaint on September 22, 2005, more than two years after the accident occurred.

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). Here there are no genuine issues of material fact. The motion turns exclusively on an interpretation of Connecticut law.

### B. *Chappetta I*

In Chappetta's initial suit, Civil Case No. 3:05cv896 (SRU), I granted summary judgment in favor of Soto. Soto argued that, because Chappetta failed to serve him within the two-year limitations period, Chappetta's suit was not commenced within Connecticut's statute of limitations. Although Chappetta timely filed her complaint in federal court, I held that her suit against Soto had not been timely commenced for statute of limitations purposes because Soto was not actually served until after the statute of limitations had expired. *Chappetta v. Soto*

*("Chappetta I")*, 453 F. Supp. 2d 439, 442 (D. Conn. 2006).

In reaching that conclusion, I first determined that, because the case was founded on diversity jurisdiction, Connecticut's statute of limitations and service rules governed. *Id.* (citing *Converse v. General Motors Corp.*, 893 F.2d 513, 515 (2d Cir. 1990); *Slekis v. AMTRAK*, 56 F. Supp. 2d 202, 204 (D. Conn. 1999)). In Connecticut, personal injury suits alleging negligence must be brought within two years from the date the injury is first sustained or discovered. Conn. Gen. Stat. § 52-584. Furthermore, Connecticut follows the actual service rule, meaning a lawsuit is only "commenced" upon actual service on the defendant. *Palacio v. Munies*, 1999WL 608818, at *2 (D. Conn. 1999). Therefore, because Chappetta actually served Soto on or after September 22, 2005, more than two years after the accident occurred, I concluded Chappetta's claims against Soto were untimely and granted summary judgment.

Chappetta initiated this separate action by refiling her claims against Soto in November 2006. She contends that she is eligible to proceed on the merits pursuant to Connecticut's accidental failure of suit statute (hereinafter, the "savings statute"), Conn. Gen. Stat. § 52-592, because her initial suit was dismissed as untimely due to insufficient service. Soto filed the pending motion for summary judgment shortly thereafter, arguing that her claims are time-barred and that she is not eligible to invoke the savings statute.

C. The Savings Statute and *Rocco*

Connecticut's savings statute provides, in pertinent part, that "[i]f any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, . . . the plaintiff . . . may commence a new action . . . for

the same cause at any time within one year after the determination of the original action or after the reversal of the judgment." Conn. Gen. Stat. § 52-592(a). The parties do not dispute that Chappetta's initial action failed to be tried on the merits due to insufficient service, nor do they dispute that Chappetta filed the present action within one year after the initial action was dismissed.

Thus, the question raised by the present motion is whether Chappetta's initial suit meets the requirements of "timely commencement" for purposes of the savings statute so that her claims are saved pursuant to section 52-592. The Connecticut Supreme Court, in *Rocco v. Garrison*, 268 Conn. 541 (2004), held that "commencement" for purposes of the statute of limitations is different than "commencement" for purposes of the savings statute. "[T]he language of § 52-592 distinguishes between the commencement of an action and insufficient service . . . . [and] cannot be construed to mean good, complete and sufficient service of process." *Id.* at 550-51. To determine whether Chappetta's initial suit was timely commenced for purposes of the savings statute, we must look to the *Rocco* decision.

The *Rocco* plaintiffs brought their initial action in the United States District Court for the District of Connecticut, alleging personal injuries arising out of a motor vehicle accident. *Id.* at 544-45. The accident occurred on July 18, 1998; the plaintiffs filed their complaint in federal court on July 6, 2000, within Connecticut's two-year statute of limitations for personal injury suits alleging negligence. *Id.* at 545. The plaintiffs then sought to serve the defendant, a Pennsylvania resident, pursuant to the request for waiver of service procedure established by

Rule 4(d)(2) of the Federal Rules of Civil Procedure.[1]  *Id.*  In compliance with the requirements of Rule 4(d), the plaintiffs sent the defendant, via certified mail to her home address: the summons and complaint, two copies of a notice and request for waiver of formal service, along with a self-addressed, prepaid envelope for the return of the signed waiver.  *Id.* at 546.  According to the certified mail receipt, the materials were delivered to the defendant's home on July 14, 2000, four days before the expiration of the limitations period.  *Id.*  The defendant subsequently refused to sign the waiver request and the limitations period expired before the plaintiffs were able to formally serve the defendant pursuant to Rule 4(e) on September 13, 2000.  *Id.*  The federal District Court granted the defendant's motion for summary judgment on the ground that the plaintiffs had failed to timely commence their action before the expiration of the two-year statute of limitations because service was not formally made until September 2000.  *Id.*

The *Rocco* plaintiffs subsequently commenced a second suit in Connecticut Superior Court, alleging the same cause of action against the defendant.  *Id.*  The defendant moved for summary judgment on the ground that the federal court action had not been timely commenced within the meaning of the savings statute due to a lack of proper service.  The Superior Court granted the defendant's motion.  *Id.* at 547.  The plaintiffs appealed that ruling, arguing that their initial suit was timely commenced for purposes of the savings statute because the defendant received "clear and unmistakable notice" of suit via the delivery of the Rule 4(d) materials prior to the expiration of the limitations period.  *Id.*  The defendant argued that the savings statute was inapplicable to the plaintiffs' action because, in Connecticut, a suit is timely commenced only

---

[1] At the time *Rocco* was decided, the pertinent provisions were codified as Rule 4(d)(2). Those same provisions have subsequently been redistributed into Rule 4(d)(1) and (d)(2).  For clarity's sake, I will refer to those provisions as Rule 4(d).

when the defendant is properly served. *Id.* at 547-48. Therefore, because the defendant had not been formally and properly served pursuant to Rule 4(e) until after the expiration of the limitations period, she argued, the savings statute did not apply. *Id.* at 548.

The Connecticut Supreme Court disagreed with the defendant, concluding that her interpretation of the savings statute would render it "meaningless." *Id.* at 548, 550. "If the savings statute requires effective commencement of the original action, and commencement requires valid service of process, as the defendant argues, then any failure of service of process would require us to conclude that no action had been commenced and that the statute does not apply." *Id.* at 550. The Court declared such an interpretation would render "superfluous" one of the statute's primary purposes: "to save those actions that have failed due to insufficient service of process." *Id.* Significantly, the Court noted that the language of the savings statute "distinguishes between the commencement of an action and insufficient service of process by providing that the action may fail *following* its commencement *because of* insufficient service." *Id.* (emphasis in original). "To accept the view that improper or insufficient service defeats such an action would undermine the statute's clear and unambiguous meaning and preclude the filing of a second action." *Id.* at 550-51. The *Rocco* Court thus concluded that commencement of an action for purposes of section 52-592 "cannot be construed to mean good, complete and sufficient service of process." *Id.* at 551.

D.   Interpreting *Rocco*

The principal legal holding of *Rocco* is that the commencement of an action for purposes of the savings statute means something less than the commencement of an action for statute of limitations purposes. In all other respects, the Connecticut Supreme Court decided that case on

its facts. The Court did not need to, and accordingly did not, state a general rule concerning when an action brought in federal court is commenced for purposes of the savings statute. It is my duty to predict, based on *Rocco*, how the Connecticut Supreme Court would decide this case.

One plausible reading of *Rocco* is that a federal court lawsuit has been commenced within the meaning of the savings statute only upon the defendant's receipt of actual notice of the suit. Such a reading receives support from the *Rocco* Court's statement that "we agree with the plaintiffs that the original action was 'commenced' within the meaning of the savings statute when the defendant received effective notice of that action within the time period prescribed by § 52-584." *Id. See also id.* at 552 ("the plaintiffs' original action was 'commenced' for purposes of the savings statute, when the defendant received actual notice of the action within the time period prescribed by the statute of limitations.").

In my view, however, the better reading of *Rocco* is that the Court held that the defendant's receipt of actual notice of the pendency of a federal court action is sufficient, but not necessary, to commence an action for purposes of the savings statute. In other words, by indicating that the action was commenced "when" the defendant received notice, the Court meant that *on that date*, which was within the statute of limitations, the *Rocco* plaintiffs' action had been commenced; it did not mean that the action had been commenced *because* the defendant received actual notice or that the action was commenced *by reason of* the receipt of actual notice. Several aspects of the *Rocco* decision support this view.

First, the Court's discussion of the notice issue arose from its analysis of the requirements of the waiver of service provisions of Rule 4(d) of the Federal Rules of Civil Procedure. It recited the portion of Rule 4(d) that provides that any defendant who "receives notice of an

action in the manner provided in [the rule] has a duty to avoid unnecessary costs of serving the summons." *Id.* at 551; *see generally id.* at 551-52. The Court explained that all of the items "required under rule 4(d)(2) to effect service of process . . . had been delivered to the defendant . . . four days before the two year statute of limitations had expired." *Id.* at 552.

Second, the Court strongly suggested that *Rocco* was an easy case, not one close to the line. Significantly, the Court noted that, "[b]y following the procedure set forth in rule 4(d)(2) to obtain a waiver of formal service from the defendant, the plaintiffs, for all practical purposes, also satisfied the requirements of state law pertaining to formal service of process." *Id.* at 553. In other words, "for all practical purposes," the statute of limitations was met. An action has certainly been commenced within the meaning of the savings statute if the statute of limitations has actually or practically been met.[2]

The *Rocco* plaintiffs satisfied the statute of limitations "for all practical purposes" because of the manner in which an action is commenced in Connecticut state court. In Connecticut, before filing the complaint in court, the plaintiff must serve the defendant with a writ of summons and the complaint. Conn. Gen. Stat. § 52-45a.[3] The plaintiff must retain a

---

[2] In *Rocco*, the Connecticut Supreme Court could not review the correctness of the ruling that the initial action had not been commenced within the statute of limitations, because that ruling was made by the District Court, not by a Connecticut Superior Court. *Res judicata* would have prevented the Supreme Court from reaching the issue, in the event it disagreed. There is nothing to be gained from speculating what the Supreme Court might have done had it been able to review the statute of limitations issue; the point is simply that the Court noted just how close the *Rocco* plaintiffs came to satisfying the statute of limitations.

[3] Connecticut General Statutes § 52-45a states that "[c]ivil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties, the court to which it is returnable, the return day, the date and place for the filing of an appearance and information required by the Office of the Chief Court Administrator. The writ shall be accompanied by the plaintiff's complaint." This is also known as "mesne process." Connecticut

"proper officer" to formally serve the defendant, which generally means a state marshal, constable, sheriff, or sheriff's deputy. Conn. Gen. Stat. § 52-50. Proper service requires either "in hand" service, where the officer literally hands the defendant a copy of the summons and complaint, or "abode" service, where the officer leaves the summons and complaint at the defendant's home or any place "where he would most likely have knowledge of service of process." Conn. Gen. Stat. § 52-57(a); *Plonski v. Halloran*, 420 A.2d 117, 117 (Conn. Super. Ct. 1980) (citing *Clegg v. Bishop*, 105 Conn. 564, 569 (1927)). The purpose of abode service "is to ensure actual notice to the defendant that the action is pending." *Hartford Nat'l Bank & Trust Co. v. Tucker*, 178 Conn. 472, 479 (1979). Once the officer makes service, he or she completes the "return of service," or "writ of return," which is used to prove that the defendant was properly served. Conn. Gen. Stat. § 52-46a; *Bove v. Bove*, 93 Conn. App. 76, 82 (Conn. App. Ct. 2006) ("[W]e look to the facts described in the sheriff's return to demonstrate compliance with the requirements for service of process. 'The return is prima facie evidence of the facts stated therein.'") (quoting *Jenkins v. Bishop Apartments, Inc.*, 144 Conn. 389, 390 (1957)). A plaintiff then initiates the action in Connecticut Superior Court by "returning" to court for filing the completed writ of return, along with the original summons and complaint. Until that point in time there has been no action pending in the state court, nor has a docket number been assigned. It therefore makes sense that, under Connecticut practice, an action is commenced for purposes of the statute of limitations when the defendant is served, rather than when complaint is filed,

---

Practice Book, § 8-1.

because that is what occurs *first*.[4] *See, e.g., Rana v. Ritacco*, 236 Conn. 330, 337 (1996) ("This court has long held that an action is brought once the writ, summons and complaint have been served upon a defendant."); *Broderick v. Jackman*, 167 Conn. 96, 99 (1974) ("[A]n action is commenced not when the writ is returned but when it is served upon the defendant."). In federal court, in contrast, the complaint is filed first, then served along with the summons, and the return of service serves only to prove service has been made, not to open a court case.

Finally, the *Rocco* Court noted these significant differences between the commencement of an action in federal and state court. The Court explained: "the plaintiffs filed the complaint in the District Court, as required under the federal rules, prior to the issuance of the signed and sealed summons. Accordingly, there is ample support for our conclusion that the original action was commenced in a timely manner within the meaning of the savings statute." *Id.* (citation omitted). The Court seemed in the quoted passage to acknowledge as significant the fact that a case is opened and pending in federal court upon the filing of the complaint, with service made only thereafter. In a real sense, therefore, an action is commenced in federal court upon filing; indeed, with federal court cases other than diversity of citizenship cases, the statute of limitations is satisfied upon the filing of the complaint rather than service of process. Although commencement in the sense of opening a federal court case and assigning a docket number does not satisfy the statute of limitations under Connecticut law, the *Rocco* Court suggested that it

---

[4] In federal court, however, the opposite occurs. The plaintiff files his or her complaint first, and *then* seeks service of process on the defendant. In federal question actions, the suit is considered timely commenced if it is filed before the expiration of the statute of limitations. *Henderson v. United States*, 517 U.S. 654, 657 n.2 (1996) ("In a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations."). Rule 4(m) provides that the plaintiff has 120 days to serve the defendant after the complaint has been filed.

might constitute "commencement" of an action for purposes of the savings statute.

For the foregoing reasons, I conclude that a federal court action is commenced for purposes of the savings statute when it is filed. If an action governed by Connecticut law is filed in federal court within the statute of limitations, but is not properly served pursuant to Connecticut law so that it has not been timely commenced for purposes of the statute of limitations, the savings statute permits it to be brought again within one year.

E. Application to Chappetta's Suit

Chappetta satisfied the savings statute's requirement that her lawsuit be "timely commenced" when she filed her complaint in federal court prior to the expiration of the statute of limitations, despite failing to successfully serve Soto before the limitations period lapsed. Her lawsuit later failed because of insufficient or improper service. Thus, Chappetta meets the requirements of the savings statute; her claims against Soto are "saved" and may proceed on the merits.

## III. Conclusion

For the foregoing reasons, Soto's motion for summary judgment (**doc. #10**) is **DENIED**.

It is so ordered.

Dated at Bridgeport, Connecticut, this 29th day of September 2008.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge